42 P.3d 952 (2002)
145 Wash.2d 789
In re the DETENTION of Ronald L. PETERSEN, Petitioner,
v.
STATE of Washington, Respondent.
In re the Detention of Bernard Thorell, Petitioner,
v.
State of Washington, Respondent.
No. 70360-4.
Supreme Court of Washington, En Banc.
Argued March 29, 2001.
Decided March 21, 2002.
*954 Suzanne Elliott, Robert W. Goldsmith, Seattle, Christine Anne Jackson, Dennis Paul Carroll, Seattle, for Petitioners.
Norm Maleng, King County Prosecutor, David J.W. Hackett, Deputy, Seattle, for Respondent.
*953 SANDERS, J.
These consolidated cases concern the procedures in probable cause hearings held pursuant to former RCW 71.09.090(2) (1995),[1] *955 hearings that may take place as part of the annual review of prisoners detained under the sexually violent predator statute. Division One of the Court of Appeals certified the cases to this Court pursuant to RCW 2.06.030(d) and RAP 4.4 to harmonize our majority opinions in In re Detention of Petersen, 138 Wash.2d 70, 980 P.2d 1204 (1999) and In re Detention of Turay, 139 Wash.2d 379, 986 P.2d 790 (1999). We accepted certification on November 7, 2000.
For the reasons detailed infra, we reverse and remand both cases. Specifically, we remand Petersen's case for a new probable cause hearing after providing the opportunity for discovery. We remand Thorell's case for an evidentiary hearing.

I.
Factual and Procedural Background
A. Ronald L. Petersen
After release from prison, the State committed Ronald L. Petersen as a sexually violent predator pursuant to chapter 71.09 RCW (1995). He has been incarcerated at the Special Commitment Center (SCC) since 1995.
As required by RCW 71.09.070, Petersen had an annual review in 1999.[2] SCC psychologist Dr. Vincent Gollogly provided an annual report asserting Petersen continued to satisfy the definition of a sexually violent predator. Petersen noted the deposition of Dr. Gollogly for July 2, 1999. The State then moved for a protective order arguing such a deposition "serves no useful purpose and disrupts an important state interest." Clerk's Papers (CP) at 51-54. After finding Petersen failed to show good cause as a prerequisite to a deposition, the trial court granted the State's motion, issued a protective order, and quashed the notice of deposition.
On July 30, 1999, the trial court dismissed Petersen's petition for an evidentiary hearing, concluding there was no probable cause. Petersen appealed to Division One of the Court of Appeals, which certified the case to this Court.
B. Bernard Thorell
Bernard Thorell has been detained as a sexually violent predator at the SCC since 1998. Beginning in January 1999 Thorell underwent corneal transplant surgery and quadruple bypass surgery with complications, resulting in a delay of the annual review process.
On March 5, 1999, Thorell declined to waive his rights to petition for unconditional discharge or conditional release to a less restrictive alternative and requested a hearing and appointment of counsel. A probable cause hearing was set for April 30, 1999.
Thorell's 1999 annual evaluation concluded in a report by SCC psychologist Dr. Daniel Yanisch that "Thorell suffers from a mental abnormality that renders him more likely than not to commit predatory sexual offenses if he were released to the community." CP at 258. Dr. Yanisch also recommended he not be considered for a less restrictive placement.
The primary declarant in support of Thorell was Dr. Thomas Gratzer. He opined Thorell's risk to reoffend was reduced by the substitution of the drug Depo-Lupron for the drug Luvox into Thorell's treatment regime. Dr. Gratzer took the same position in his declaration as he did at the original commitment hearing regarding Thorell's use of the drug Luvox. In addition, Dr. Gratzer had Thorell tested by polygraph and plethysmograph. As there was no evidence of arousal in the plethysmograph examination, he determined it was inconclusive. The physiological responses in the polygraph examination indicated Thorell had answered truthfully to questions about sexual arousal and whether or not he had manipulated the plethysmograph evaluation. After the State's reply, Thorell submitted a new declaration from Dr. Gratzer that stated Thorell was unlikely to reoffend if conditionally released to a less restrictive alternative.
In its June 9, 1999 order, the trial court expressed "[t]he burden is on [Thorell] at the Show Cause hearing to produce evidence sufficient *956 to support the finding." CP at 351. Based on the State's annual evaluation and Thorell's contrary evidence, the trial court concluded Thorell "has not met his burden of establishing probable cause to believe that he is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative." CP at 354. Thorell's motion for a hearing on the issue of conditional release to a less restrictive alternative was denied.
The court agreed to reconsider the June 9, 1999 decision because the trial court overlooked Dr. Gratzer's April 28, 1999 declaration on behalf of Thorell. On December 20, 1999, the court denied the petition for reconsideration. In its order it did not restate that the burden to establish probable cause rested on Thorell. Instead, it concluded "the state has established the absence of probable cause to believe that Mr. Thorell is safe to be conditionally released." CP at 348.
Thorell filed a timely notice and motion for discretionary review, which resulted in this certified consolidated case.

II.

Issues
The main issues before this Court include:
(1) Who bears the burden of proof at a show cause hearing pursuant to former RCW 71.09.090(2)?
(2) What is the proper standard of proof to be applied?
(3) Do prisoners have the right to depose the State's expert witness to prepare for such hearings?

III.

Analysis
A. Burden of Proof
Both this Court's opinions and those of the United States Supreme Court heavily favor placing the burden of proof on the State in former RCW 71.09.090(2) show cause hearings. For example, in Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the United States Supreme Court reviewed a Louisiana civil commitment statute similar to our statute. Foucha held the State bears the burden of proof in civil commitment proceedings. Foucha, 504 U.S. at 86, 112 S.Ct. 1780. Our Court previously held the State bears the burden of proving that a person be civilly committed under our sexually violent predator statute. See In re Pers. Restraint of Young, 122 Wash.2d 1, 37, 857 P.2d 989 (1993).
However, it is now suggested we have issued two contradictory opinions on point: Petersen, 138 Wash.2d 70, 980 P.2d 1204 and Turay, 139 Wash.2d 379, 986 P.2d 790. However, in Petersen, there was no challenge to the constitutional burden of proof at a show cause hearing. Rather Petersen only challenged the validity of the State's evaluation on grounds of his right to counsel and right to a personal interview. Petersen, 138 Wash.2d at 91-95, 980 P.2d 1204. Petersen did not argue the trial court erred by impermissibly placing the burden of proof on him at the show cause hearing. Therefore, although Petersen contains language suggesting the burden rests on the prisoner, see 138 Wash.2d at 90, 980 P.2d 1204, that issue was not then before us.
Turay asked, for the first time, who bears the burden of proof at a former RCW 71.09.090(2) show cause hearing, and the Court clearly answered that the bearer of this burden is the State, not the prisoner.[3] The Court first recognized the precedent set by Foucha and Young, see Turay, 139 Wash.2d at 423, 986 P.2d 790, and then unambiguously held:
[B]oth this court and the United States Supreme Court agree that the State must bear the burden of proof in involuntary civil commitment hearings, and, therefore, *957 the trial court was correct in determining that due process requires that the burden of proof remain upon the State in the show cause hearing. We, therefore, reject the State's contention that it does not have to bear the burden of proof in show cause hearings held pursuant to RCW 71.09.090.

Id. at 424, 986 P.2d 790 (emphasis added). The Court likewise concluded "the State must bear the burden of proof in show cause hearings held pursuant to RCW 71.09.090(2)." Turay, 139 Wash.2d at 424, 986 P.2d 790. Unlike Petersen, Turay firmly and explicitly holds the burden of proof rests on the State. And that is also our holding today.
B. Standard of Proof
1. The Probable Cause Standard
Former RCW 71.09.090(2) provides in relevant part:
[t]he court shall set a show cause hearing to determine whether facts exist that warrant a hearing.... If the court at the show cause hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged, then the court shall set a hearing on the issue.
(Emphasis added.)
Under this statute the inquiry is whether "facts exist" which warrant a hearing on the merits. The standard of proof is "probable cause."
The probable cause standard is familiar to judges as it is used frequently in the Fourth Amendment context. One of the most common examples is the determination of probable cause to issue a search warrant. There the burden is on the State to recite objective facts and circumstances which, if believed, would lead a neutral and detached person to conclude that more probably than not, evidence of a crime will be found if a search takes place. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Another common Fourth Amendment example is the determination of probable cause on a warrantless arrest. One way to determine whether a warrantless arrest is "reasonable" is to consider whether the State's evidence, if believed, establishes the officer had reasonable grounds to believe a felony had been or was being committed in his presence. See, e.g., State v. Day, 7 Wash. App. 965, 968-69, 503 P.2d 1098 (1972).
Probable cause exists if the proposition to be proven has been prima facie shown. As discussed above, the court determines whether the facts (or absence thereof)if believedwarrant more proceedings.
It is argued by counsel that certain trial standards, e.g., clear and convincing, beyond a reasonable doubt, or preponderance of the evidence, should apply to these probable cause hearings. However such evidentiary standards are inconsistent with former RCW 71.09.090(2) because they more than simply determine if "facts exist," they seek to weigh and measure asserted facts against potentially competing ones. See, e.g., Black's Law Dictionary 1182 (6th ed. 1990) (A "preponderance of the evidence" standard commonly refers to the weighing of evidence presented by both sides, where the fact finder determines whether the party with the burden of proof has provided the greater evidence.). A trial standard of proof has no application to probable cause determinations, only determinations on the merits after a full presentation of all the evidence where that evidence can be weighed and disputes can be resolved by the fact finder according to the appropriate standard of proof. Courts do not "weigh evidence" to determine probable cause.
We hold there are two possible statutory ways for a court to determine there is probable cause to proceed to an evidentiary hearing under former RCW 71.09.090(2):(1) by deficiency in the proof submitted by the State, or (2) by sufficiency of proof by the prisoner.
*958 First, probable cause may be found due to a deficiency in the State's ability to satisfy its burden to present a prima facie case to justify continued incarceration. As acknowledged in the State's briefing, it must present "prima faci[e] proof that the person continues to meet the criteria for commitment." See State's Br. in Resp. to Thorell's Third Reply at 2-3. Stated more precisely, the State must make out a prima facie case by setting forth evidence that, if believed, shows (1) the prisoner still has a mental abnormality or personality disorder, i.e., the prisoner has not "so changed," and (2) this mental abnormality or personality disorder will likely cause the prisoner to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged. See former RCW 71.09.090(2). If the State cannot or does not prove this prima facie case, there is probable cause to believe continued confinement is not warranted and the matter must be set for a full evidentiary hearing.
The second way probable cause may be established is through the prisoner's proof. Even if the State carries its burden to prove a prima facie case for continued imprisonment, the prisoner may present his own evidence which, if believed, would show (1) the prisoner no longer suffers from a mental abnormality or personality disorder, i.e., the prisoner has "so changed," or (2) if the prisoner still suffers from a mental abnormality or personality disorder, the mental abnormality or personality disorder would not likely cause the prisoner to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged. See former RCW 71.09.090(2). If the prisoner makes either showing, there is probable cause that continued incarceration is not warranted. Former RCW 71.09.090(2) then mandates the court to set the matter for a full evidentiary hearing.
2. The Standard of Appellate Review of Probable Cause Determinations
A trial court's legal conclusion of whether evidence meets the probable cause standard is reviewed de novo. Prior case law on the standard of appellate review of such probable cause determinations is admittedly muddled. Compare, e.g., State v. Perrone, 119 Wash.2d 538, 551, 834 P.2d 611 (1992) (applying a de novo standard as determination involves "point of law"); State v. Estorga, 60 Wash.App. 298, 304 n. 3, 803 P.2d 813 (1991) ("We review de novo ... whether probable cause is established."); State v. White, 44 Wash.App. 215, 218-19, 720 P.2d 873 (1986) (seemingly applying de novo standard) with State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995) (applying an abuse of discretion standard); State v. Wilson, 97 Wash.App. 578, 584, 988 P.2d 463 (1999) (same); State v. Rakosky, 79 Wash.App. 229, 240, 901 P.2d 364 (1995) (same). A good example of the confusion is State v. Perez, 92 Wash.App. 1, 963 P.2d 881 (1998), where the Court of Appeals attempted to examine a warrant de novo, afford deference to magistrate's probable cause determination, and not defer to the magistrate if the facts fail to constitute probable cause. Perez, 92 Wash. App. at 4, 963 P.2d 881. However, controlling authority from our Court, as distinguished from the Court of Appeals, favors de novo review.
Until recently federal case law on the standard of appellate review over probable cause determinations also remained blurred. However, the United States Supreme Court clarified the issue in 1996 in Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Ornelas distinguished between two types of determinations made at probable cause hearings. On the one hand, a court determines what qualifies as the "historical facts" in the case, i.e., the events "leading up to the stop or search." Id. at 696, 116 S.Ct. 1657. This determination should be given "due weight" on appellate review. Id. at 699, 116 S.Ct. 1657.
On the other hand, a court also determines whether these historical facts amount to probable cause. Id. at 696, 116 S.Ct. 1657. This latter determination is subject to de novo appellate review. Id. at 699, 116 S.Ct. 1657. The Court found de novo review of probable cause determinations serves to clarify legal principles, promotes a unitary system *959 of law, and better aids law enforcement. See id. at 696-98, 116 S.Ct. 1657. Accordingly, unlike reviewing historical facts, the Court held "determinations of ... probable cause should be reviewed de novo on appeal." Id. at 699, 116 S.Ct. 1657.
The State fails to distinguish (or cite) Ornelas when it claims the abuse of discretion standard is the clear rule in Washington. Counsel cite abuse of discretion cases pertaining to Aguilar-Spinelli determinations of probable cause that are based on the credibility and reliability of confidential informants or anonymous tips, i.e., "historical facts." See State's Resp. at 2-4 (Thorell) (citing Cole, 128 Wash.2d at 286, 906 P.2d 925; State v. Murray, 110 Wash.2d 706, 713, 757 P.2d 487 (1988); State v. Cord, 103 Wash.2d 361, 366, 693 P.2d 81 (1985); Wilson, 97 Wash.App. at 584-85, 988 P.2d 463; Rakosky, 79 Wash.App. at 240, 901 P.2d 364); State's Resp. at 19-20 (Thorell) (same); State's Resp. Br. at 11-13 (Petersen) (same).
However in an Aguilar-Spinelli probable cause context the trial court or magistrate necessarily first must find whether the information from these tips is sufficiently competent to qualify as historical fact. See State v. Jackson, 102 Wash.2d 432, 436-43, 688 P.2d 136 (1984). Fact-finding on reliability and credibility is required. Id. On such matters it makes sense for a magistrate or trial judge to be afforded appropriate discretion on review. Id. However, as described later in Ornelas, once the court makes this factual determination, it then must decide the legal issue whether the qualifying information as a whole amounts to probable cause. As to this legal conclusion, de novo appellate review is necessary.
Like the United States Supreme Court in Ornelas, we hold probable cause determinations in this consolidated case must be reviewed de novo. The only question is whether the evidence, or lack thereof, suffices to establish probable cause for an evidentiary hearing. The rule articulated in Ornelas controls.
C. Discovery
This Court has previously held the sexually violent predator statute is civil in nature. Young, 122 Wash.2d at 23, 857 P.2d 989 ("In sum, we conclude that the sexually violent predator Statute is civil, not criminal, in nature."). The rules of civil procedure:
govern the procedure in the superior court in all suits of a civil nature whether cognizable as cases at law or in equity with the exceptions stated in rule 81.
CR 1. Rule 81 provides in relevant part:
Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings.
Even assuming former RCW 71.09.090(2) probable cause hearings are "special proceedings," nothing in that statute is inconsistent with the civil discovery rules.
Accordingly, as with preparation for other civil proceedings, to prepare for a show cause hearing held pursuant to former RCW 71.09.090(2) we hold a prisoner is allowed to depose any of the State's expert witnesses and conduct such discovery as is permitted by the civil rules.
D. Petersen
Petersen was denied his right to depose Dr. Gollogly to prepare for the probable cause hearing. The trial court issued a protective order denying Petersen the opportunity for such a deposition. The order placed the burden on Petersen to show "good cause" to obtain a deposition.
CR 26(c) governs protective orders. Under this rule, however, the party opposing discovery (here, the State) must show "good cause" to prevent or limit the discovery. Placing the duty to show good cause on Petersen violated CR 26(c) and erroneously denied Petersen his right to depose the State's expert.
E. Thorell
In Thorell's case the trial court clearly erred when, in its 1999 order, it stated the burden of proof at the probable cause hearing rested on Thorell. However, the court *960 corrected this error in its order on reconsideration. There the court made clear it relied on the State's evidence in finding no probable cause for an evidentiary hearing. It stated "the state has established the absence of probable cause." CP at 348. Accordingly, on reconsideration the court properly placed the burden of proof on the State.
Nevertheless, even assuming the State met its burden to prove a prima facie case for continued incarceration at Thorell's show cause hearing, Thorell presented sufficient evidence to establish prima facie probable cause that continued imprisonment was unlawful. Dr. Gratzer first personally evaluated and interviewed Thorell in 1997. See CP at 130-34 (Letter of Oct. 30, 1997). He determined then that certain medication would suppress Thorell's pedophilic urges. See id. Dr. Gratzer again personally evaluated and interviewed Thorell in 1999 after reviewing all of Thorell's clinical files and medical notes from the SCC since his commitment. See CP at 216 (Decl. of Dr. Gratzer on Apr. 8, 1999). Dr. Gratzer evaluated the effect of Thorell's participation in the SCC treatment program that included continued pharmacological treatment with the drug Depo-Lupron. See id. at 216-18. This treatment had a positive effect on Thorell, which Dr. Gratzer confirmed with blood tests, polygraph tests, and plethysmograph tests. See id. at 217. These tests showed the Depo-Lupron treatment significantly reduced Thorell's "mental abnormality." See id.
Dr. Gratzer's declarations specifically detailed why he concluded Thorell's alleged mental abnormality would not likely cause him to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative. See CP at 294-97 (Decl. of Dr. Gratzer on July 6, 1999); CP at 172 (Decl. of Dr. Gratzer on Apr. 28, 1999); CP at 216-18 (Decl. of Dr. Gratzer on Apr. 8, 1999). As to what he meant by "appropriate" less restrictive alternative, Dr. Gratzer set forth at length numerous conditions that should be considered and conditions that should be required.[4]See CP at 294-97.
The trial court's ruling against Thorell was based on its claim the declarations of Dr. Gratzer were "very guarded." See CP at 357 (Order on Recons.). This rings of weighing the evidence, not simply determining if it exists. As discussed above, the standard of proof at the show cause hearing is probable cause. Here, the trial court misapplied the standard. Even assuming the State made out a prima facie case to justify continuing Thorell's imprisonment, Thorell provided evidence which, if believed, showed Thorell's mental abnormality would not likely cause him to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative. Thus, even though the burden of proof does not rest on Thorell, we conclude he has demonstrated probable cause. Accordingly, the trial court erred when it did not order an evidentiary hearing where factual findings could have been made to resolve the competing evidence and/or inferences therefrom.

IV.

Conclusion
For the foregoing reasons, we hold at former RCW 71.09.090(2) probable cause hearings the State, and only the State, has the ultimate burden of proof; the standard of proof is probable cause, i.e., prima facie; and prisoners detained under the sexually violent predator statute have a right to prepare for such hearings through discovery as permitted by the civil court rules, including deposing any of the State's expert witnesses in accordance with these rules.
We remand Petersen's case to the trial court for a new probable cause hearing after he is afforded the benefit of discovery.
We remand Thorell's case to the trial court for an evidentiary hearing.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, and CHAMBERS, JJ., concur.
*961 IRELAND, J. (dissenting).
The majority wrongly uses a criminal standard for probable cause in spite of our clear holding that the sexually violent predator proceeding is civil. In re Pers. Restraint of Young, 122 Wash.2d 1, 857 P.2d 989 (1993). "In sum, we conclude that the sexually violent predator Statute is civil, not criminal, in nature. The language and history of the Statute so indicate, as do its purposes and effect." Id. at 23, 857 P.2d 989. This court should affirm both trial courts' denials of evidentiary hearings. Therefore, I dissent.

FACTS
In re Detention of Ronald L. Petersen
Ronald L. Petersen has been committed as a sexually violent predator since 1995. He began a long series of brutal sexual assaults, beginning at the age of eight. As a result of his history of multiple crimes, after his last release from prison, the State sought his commitment as a sexually violent predator pursuant to former chapter 71.09 RCW (1995). After a 1995 trial in which the State's experts testified Petersen suffered from paraphilia, sexual sadism, and an antisocial personality disorder, a unanimous jury concluded Petersen was a sexually violent predator in need of total confinement. He has been at the Special Commitment Center (SCC) in the custody of the Department of Social and Health Services (DSHS) since 1995.
Petersen has undergone four annual evaluations at SCC since his original commitment. He has declined all treatment at SCC and has declined to present any expert testimony on his behalf in any of his annual reviews. Petersen's annual evaluation in 1996, based on the declarations of two state experts, concluded he did not meet the criteria for release from confinement. The trial court subsequently found Petersen's condition had not changed, largely because he refused sex offender treatment at SCC. Petersen appealed that decision and this Court affirmed the trial court's ruling that Petersen did not establish probable cause to believe his condition had changed. In re Det. of Petersen, 138 Wash.2d 70, 95, 980 P.2d 1204 (1999)
Petersen's 1997 annual evaluation concluded, in a report by staff clinical psychologist Dr. Regina Harrington that Petersen continued to suffer from his previous conditions. The report stated: "`At this time, this man remains an untreated sex offender who is more likely than not to repeat violent and predatory sexual assaults if he were released to live freely in the community.'" Petersen, 138 Wash.2d at 76, 980 P.2d 1204 (quoting Clerk's Papers at 15-16). Petersen offered no evidence to contravene Dr. Harrington's report. The trial court held a hearing and found, based on this report and the absence of refuting evidence, that there was no probable cause to believe Petersen's condition had so changed that a full evidentiary hearing should be held.
At Petersen's 1998 annual evaluation, licensed psychologist Dr. Stephen Wagner of the SCC recommended against release. Petersen presented no contrary declarations or any evidence suggesting a change in his condition. On June 23, 1998, the trial court found that Petersen continued to meet the definition of a sexually violent predator and that release to a less restrictive alternative was not appropriate. Based on the record, the court found no probable cause to support a full evidentiary hearing.
Petersen's 1999 annual evaluation concluded, in a report by staff psychologist Dr. Vincent Gollogly of the SCC, that Petersen satisfied the definition of a sexually violent predator and that after another year, Petersen still refused treatment. Dr. Gollogly did not personally interview or evaluate Petersen. On July 30, 1999, the trial court found that "there is not probable cause to believe that respondent's condition has so changed that he is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged." Clerk's Papers (CP) at 87. This 1999 annual review, which Petersen appealed to Division One of the Court of Appeals, resulted in the consolidated case certified to this Court.
In re Detention of Bernard Thorell
Bernard Thorell has been committed as a sexually violent predator since 1998. His *962 history of committing acts of predatory sexual violence against children extends back to the age of 13. After the State's experts testified Thorell suffered from paraphilia pedophilia, other paraphilias, exhibitionism, and several personality disorders, a unanimous jury at the 1998 commitment trial determined that Thorell was a sexual violent predator. Thorell has been placed by DSHS in the SCC since 1998. As the majority notes, beginning in January 1999, Thorell underwent serious surgeries with complications, resulting in a delay of the annual review process. Majority at 955.
The 1999 annual report by licensed psychologist Dr. Daniel Yanisch of the SCC gave his opinion that "Thorell suffers from a mental abnormality that renders him more likely than not to commit predatory sexual offenses if he were released to the community." CP at 258. "It is also my opinion that he continues to require sex offender treatment in a secure placement such as that provided by the Special Commitment Center." Id. "To my knowledge there are no other facilities that offer such treatment with adequate security to meet his needs and the needs of the community. I do not recommend that the Court consider a less restrictive placement at this time." Id.
As detailed in the majority, Thorell's primary witness was Dr. Thomas Gratzer, who recommended that a change of medication would reduce Thorell's risk to reoffend. Majority at 955. After the State's reply, Thorell submitted a new declaration from Dr. Gratzer that stated Thorell was unlikely to reoffend if "conditionally released to an appropriate less restrictive alternative." CP at 172. Dr. Gratzer did not define this "appropriate" less restrictive alternative (LRA), nor was any evidence presented that such an LRA actually existed.
On June 9, 1999, based on the evaluation and Thorell's refuting evidence, the trial court held at the probable cause hearing that Thorell had not established "probable cause to believe that he is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative." CP at 193. Thorell's motion for a hearing on the issue of conditional release to an LRA was denied. The court agreed to reconsider the June 9, 1999 decision because Dr. Gratzer's April 28, 1999 declaration on behalf of Thorell had been overlooked. On December 20, 1999, the court denied the petition for reconsideration as the State had "established the absence of probable cause to believe that Thorell is safe to be conditionally released." CP at 357.

ANALYSIS
Standard of Review
Determination of the proper standard of review of sexually violent predator proceedings rests upon whether the question presented for review is one of fact, or a mixed question of law and fact. This Court reviews questions of law de novo. Monroe v. Soliz, 132 Wash.2d 414, 418, 939 P.2d 205 (1997). The interpretation of the sexually violent predator statute, former RCW 71.09.090(2) (Laws of 1995, ch. 216, § 9), is a question of law requiring de novo review.
The issues as framed by the majority are:
(1) Who bears the burden of proof at a show cause hearing pursuant to former RCW 71.09.090(2)?
(2) What is the proper standard of proof to be applied?
(3) Do prisoners have the right to depose the State's expert witness to prepare for such hearings?
All of these issues are questions of law requiring a de novo review. The majority seems to agree. However, the majority confuses the standard of review for such issues of law with the standard of review when reviewing the trial court's decision applying the law to the facts.
The majority acknowledges many cases which hold that such a determination is the deferential "abuse of discretion" standard, but insists that the standard of review in a probable cause hearing should be de novo. The majority claims the cases of our Supreme Court as opposed to the Court of Appeals favor de novo review. I disagree.
The majority's reliance on State v. Perrone, 119 Wash.2d 538, 551, 834 P.2d 611 (1992) is inappropriate because, as is conceded, *963 it concerns a determination of law (the particularity requirement) rather than a determination of probable cause. Perrone, 119 Wash.2d at 545, 834 P.2d 611. The only Supreme Court case cited by the majority, which is on point, applies an abuse of discretion standard to the probable cause determinations just as the Court of Appeals has. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995). The proper standard of review for the trial court's determination of probable cause is abuse of discretion. The majority creates a new standard and thereby overrules significant Supreme Court and Court of Appeals holdings to the contrary. The reliance on Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) is inappropriate in this case because the civil probable cause determination here is not of the same character as review of a criminal law determination of probable cause for a warrantless search.
The paramount issue in these appeals is to clarify the burden applicable at a former RCW 71.09.090(2) probable cause hearing. Former RCW 71.09.090(2) provides as follows:
(2) Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval. The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the annual report. If the person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she is safe to be conditionally released to a less restrictive alternative or unconditionally discharged. The committed person shall have a right to have an attorney represent him or her at the show cause hearing but the person is not entitled to be present at the show cause hearing. If the court at the show cause hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged, then the court shall set a hearing on the issue. At the hearing, the committed person shall be entitled to be present and to the benefit of all constitutional protections that were afforded to the person at the initial commitment proceeding. The prosecuting attorney or the attorney general if requested by the county shall represent the state and shall have a right to a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person shall also have the right to have experts evaluate him or her on his or her behalf and the court shall appoint an expert if the person is indigent and requests an appointment. The burden of proof at the hearing shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged.
Former RCW 71.09.090(2).
A probable cause hearing is initiated by one of two means. Under subsection (1), the secretary of DSHS may determine that, if released (conditionally or unconditionally), the committed person is no longer likely to engage in predatory acts of sexual violence. Former RCW 71.09.090(1). This approval by the secretary authorizes the committed person to petition the court. Id. The court orders a hearing within 45 days of the petition. Id. In the release hearing, the State or the committed person can demand a jury trial. Id. During this release hearing, the burden of proof is on the State to show beyond a reasonable doubt that the committed person is not safe to be at large and is likely to engage in predatory acts of sexual violence. Id.
*964 Under subsection (2), the committed person may petition the court for release without the secretary's approval. Former RCW 71.09.090(2). The secretary shall provide the following: (1) an annual written notice of right to petition over the secretary's objection; and (2) a waiver of rights. Id. The secretary forwards both the notice and waiver to the court with the annual report. Id. If the committed person signs the waiver of rights, this process ends. Id. However, if the rights are not waived, the court sets a probable cause hearing to determine if facts warrant a release hearing for unconditional discharge or a conditional release. Id.
In the probable cause hearing, the committed person has the right to be represented by an attorney. Id. However, the petitioner is not entitled to be present. Id. At the probable cause hearing, the standard is whether there is "probable cause" to believe that the committed person has so changed that the person is not likely to engage in sexually violent predatory criminal behavior upon his or her unconditional discharge or conditional release. Id. The probable cause hearing is an expression of the Legislature's wish that judicial resources not be burdened annually with full evidentiary hearings for sexually violent predators absent at least some showing of probable cause to believe a further hearing is necessary. Petersen, 138 Wash.2d at 86, 980 P.2d 1204.
If the court determines probable cause exists that the committed person's condition has so changed that he or she is safe to be unconditionally discharged or conditionally released to an LRA, the court sets a release hearing. Former RCW 71.09.090(2)
In the evidentiary release hearing, the committed person is entitled to be present and to the benefits of all constitutional protections afforded to the person at the initial commitment proceeding. Id. The State may be represented by the prosecuting attorney or the attorney general, and either party may demand a jury trial. Id. The State and the committed person have the right to evaluations of the committed person by experts. Id. If the committed person is indigent and requests an expert, the court shall appoint an expert. Id. The burden is on the State to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged. Id.
This Court has issued two decisions, Petersen, 138 Wash.2d 70, 980 P.2d 1204 and In re Det. of Turay, 139 Wash.2d 379, 986 P.2d 790 (1999), directly addressing the applicable burden of proof at the probable cause hearings.
In Turay, this Court concluded that the State must bear the burden of proof in probable cause hearings based on the following analysis. The United States Supreme Court has unequivocally held that "in civil commitment proceedings the State must establish the grounds of insanity and dangerousness permitting confinement by clear and convincing evidence." Foucha v. Louisiana, 504 U.S. 71, 86, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (citation omitted). This language indicates that due process requires the State to bear the burden of proof in all civil commitment proceedings. Turay, 139 Wash.2d at 424, 986 P.2d 790. Moreover, in Young, this Court held that "before a person can be civilly committed, the State must prove that the individual is mentally ill and dangerous." Young, 122 Wash.2d at 37, 857 P.2d 989 (footnote omitted). Accordingly, both this Court and the United States Supreme Court agree that the State must bear the burden of proof in involuntary civil commitment hearings; therefore, due process requires that the burden of proof remains on the State in the probable cause hearing. Turay, 139 Wash.2d at 424, 986 P.2d 790.
In Petersen, this Court concluded that the State bears the burden of proof in a probable cause hearing, following the United States Supreme Court precedent in Foucha. The petitioner, however, had the burden of showing facts exist to controvert the psychologist's conclusion by DSHS annual review and to demonstrate probable cause for a further hearing. Petersen, 138 Wash.2d at 90, 980 P.2d 1204. Petersen is harmonized with Turay by recognizing that the "burden of proof" *965 includes a "burden of production" and a "burden of persuasion."
This Court has noted that the term "burden of proof" includes the "burden of production" and the "burden of persuasion." Fed. Signal Corp. v. Safety Factors, Inc., 125 Wash.2d 413, 433, 886 P.2d 172 (1994).
The State's burden of production follows the statutory requirement that the Secretary annually evaluate the committed person and determine whether there has been a change or there is a continuing basis for commitment. Since the State has the burden of production each year, the concern addressed in Foucha is avoideda committed person cannot continue to be held indefinitely without review. If the State fails annually to demonstrate a continuing basis for commitment, an evidentiary hearing must result. Former RCW 71.09.090.
If the State meets its initial burden, Petersen requires that the petitioner show facts, which controvert the State's proof that the petitioner is obligated to produce evidence that "facts exist" that the committed person has so changed, to persuade the court to a contrary result. As noted in Federal Signal, "[i]t is axiomatic that each party must sustain a certain burden of production in any civil dispute." 125 Wash.2d at 434, 886 P.2d 172. In the sexually violent predator probable cause hearing, the burden of production is initially upon the State. Turay, 139 Wash.2d at 424, 986 P.2d 790. In Petersen, the court articulates the petitioner's burden of going forward with facts to contravene the State's evidence. The State may rebut the petitioner's evidence. The State bears the ultimate burden of persuasion as well as the initial burden of production, by a preponderance of the evidence. If a release hearing follows, the burden on the State is statutorily mandated to be beyond a reasonable doubt. Former RCW 71.09.090(2).
Standard of Proof
During the probable cause hearing, the court determines whether probable cause exists that the committed person's condition has so changed that the person is not likely to engage in predatory acts of sexual violence if unconditionally discharged or conditionally released. Former RCW 71.09.090(2). "Probable cause" has been defined as:
Reasonable cause; having more evidence for than against. A reasonable ground for belief in certain alleged facts. A set of probabilities grounded in the factual and practical considerations which govern the decisions of reasonable and prudent persons and is more than mere suspicion but less than the quantum of evidence required for conviction. An apparent state of facts found to exist upon reasonable inquiry ..., which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged, or, in a civil case, that a cause of action existed.
Black's Law Dictionary 1201 (6th ed.1990).
This Court has held that "the sexually violent predator Statute is civil, not criminal, in nature." Young, 122 Wash.2d at 23, 857 P.2d 989. This was affirmed by the United States Supreme Court in Seling v. Young, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) (citing Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
In an involuntary commitment proceeding for treatment of mental disorders, "[t]he standard of proof at a 14-day probable cause hearing is `preponderance of the evidence.'" In re Det. of LaBelle, 107 Wash.2d 196, 214, 728 P.2d 138 (1986); RCW 71.05.240.
Because the Legislature chose the beyond a reasonable doubt standard in sexually violent predator commitment hearings, Petersen and Thorell argue the same standard should apply to the probable cause hearing. However, even in preliminary hearings in criminal cases, such as confession and suppression hearings, the standard is a preponderance of the evidence. See generally Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (where issue was standard of proof regarding the voluntariness of confession; held appropriate standard of proof is preponderance of the evidence). In the cases before us, the probable cause hearing is a preliminary hearing, in which the standard is preponderance of the evidence.
During the probable cause hearing, the State has the burden of production to prove *966 the absence of a change in the person's mental abnormality or personality disorder such that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged. Former RCW 71.09.090(2). Once the State satisfies the burden of production by a preponderance of the evidence, the committed person may rebut the evidence by offering evidence that he or she has had a change which makes it not likely that the person will engage in predatory acts of sexual violence if unconditionally discharged or conditionally released.
In Petersen, after the State's burden of production was met, Petersen attempted to establish probable cause by merely attacking the State's evidence. The court held that the probable cause burden could not be satisfied in this manner:
Petersen presented no evidence whatsoever at the show cause hearing. All he did was move the trial court to invalidate the clinical psychologist's report solely on the grounds the reporting clinical psychologist did not personally interview him. Even if we were to hold the psychologist's report was invalid, we would still be compelled to uphold the trial court's decision finding no probable cause, insofar as Petersen presented no affirmative evidence tending to show that "facts exist" to justify a full evidentiary hearing.
Petersen, 138 Wash.2d at 90, 980 P.2d 1204.
Abuse of Discretion
Petersen and Thorell both argue that the trial court erred in finding no probable cause to proceed to a release hearing.
In re Petersen
In Petersen's probable cause hearing at issue here, the trial court's order could be construed to place the burden of production on the committed person. "Respondent has produced no evidence demonstrating that facts exist to support a determination of probable cause under former RCW 71.09.090(2)." Order Terminating 1999 Annual Review at 1. However, even though the court order fails to so acknowledge, our review of the record discloses that the state had met its burden of production. The DSHS annual report notes Petersen's continuing refusal of treatment and states: "[u]nless he fully commits to the treatment program and completes all required courses... SCC [cannot] support his release to a less restrictive alternative." 1999 Annual Review at 8. Petersen offered no evidence to contravene the State's report. Accordingly, we are persuaded that the State carried both its burden of production and the ultimate burden of proof, by a preponderance of the evidence, that Petersen's condition had not so changed as to warrant a release hearing.
In re Thorell
At the probable cause hearing in Thorell, the trial court order appeared to place the burden of production and proof on the committed person. Show Cause Order at 2. However, as acknowledged by the majority, this error was corrected in the December 20, 1999 order denying the petition for reconsideration. Majority at 956. The trial court placed the burden on the State and found "the State has established the absence of probable cause to believe that Mr. Thorell is safe to be conditionally released to a less restrictive alternative." Order on Recons. at 2. Thorell offered Dr. Gratzer's report and blood, polygraph, and plethysmograph tests to show that his testosterone levels, sexual arousal, and deviant fantasies and practices had been significantly reduced since taking Depo-Lupron. However, the trial court found "the new declarations of Dr. Gratzer, are very guarded." Order on Recons. at 2. The trial court also found:
All of the conditions of release to which Dr. Gratzer refers are in terms of "should be considered." There must be facts with sufficient particularity to give the court a sense that safe release is a possibility. A litany of factors "to be considered" does not meet that standard. The court looks for the conditions that, in the opinion of the expert, would be sufficient to support a belief that Mr. Thorell would not engage in predatory sexual behavior if released.
Id. The motion for reconsideration was denied.
*967 Great deference is given to the trial court's determination on probable cause. State v. Cord, 103 Wash.2d 361, 366, 693 P.2d 81 (1985). The trial court's determination of whether the burden of production and the burden of persuasion have been met should be done on a case-by-case basis. See generally State v. Hanna, 123 Wash.2d 704, 712, 871 P.2d 135 (1994). In Petersen, no evidence was offered by Petersen to contravene the evidence produced by the State. In Thorell, even though Thorell offered a report and test results, the court found it was not sufficient to support a belief that Thorell had so changed that he would not likely engage in predatory sexual behavior if released. Therefore, the trial courts in Petersen and Thorell did not abuse their discretion in denying a release hearing.
Less Restrictive Alternative (LRA)
In Thorell, the State argues the trial court erred in its order on reconsideration and in prior orders by not requiring that probable cause be present as to each of the elements of RCW 71.09.092, the LRA statute, before ordering a new trial under former RCW 71.09.090(2) to address LRAs.
In this case, this argument is premature, in that the probable cause hearing is to determine whether evidence exists by a preponderance that the person has changed and, therefore, is not likely to engage in predatory acts of sexual violence. Former RCW 71.09.090(2). The statute does not require that all five elements must be satisfied during a probable cause hearing. Rather, these elements must be proved at the release hearing. Since, Thorell is still in the probable cause hearing stage and not yet the release hearing stage, the trial court was correct in finding no requirement to satisfy each element of RCW 71.09.092. Although each element is not required for the probable cause hearing, if an LRA is recommended, the expert should be able to state that there are facilities and means currently available to accommodate the committed person's condition, while keeping the community safe.
"Change" Requirement
Petersen argues that the "change" requirement in former RCW 71.09.090(1) and (2) violates the equal protection and due process clauses of the state and federal constitutions. Petersen argues that regardless of who is assigned the burden of proof, the change requirement imposes a burden of production on the committed person. In addition, Petersen argues since personality disorders and paraphilias tend to be chronic and lifelong, he is virtually subject to a lifetime commitment because according to the statute, there has been "no change" in the committed person's condition.
Petersen does not cite specific authority for this argument. The "so changed" probable cause requirement performs an important gate keeping function.
In Young, this Court upheld the constitutionality of former chapter 71.09 RCW, determining that "there are no substantive constitutional impediments to the sexually violent predator scheme." Young, 122 Wash.2d at 26, 857 P.2d 989. The Court also stated:
A person cannot be deprived of procedural protections afforded other individuals merely because the State makes the decision to seek commitment under one statute rather than another statute. Thus, in regard to the initial determination of whether there is probable cause for detention, an individual is entitled to the same opportunity to appear before the court to contest detention in any civil commitment proceeding.
Young, 122 Wash.2d at 45-46, 857 P.2d 989 (citations omitted).
Following the analysis in Young, there is no violation of equal protection and due process as long as procedural safeguards are in place. Since annual review standards are in place and required by former RCW 71.09.090, there is no violation of equal protection or due process.
Discovery Ruling
In the Petersen case, the trial court granted the State's motion for protective order, quashing the notice of deposition served on the State's expert witness, Dr. Vincent Gollogly, Ph.D. Dr. Gollogly had never personally *968 interviewed or evaluated Petersen. Petersen argued that because he was prevented from deposing Dr. Gollogly, as to the factual basis for his opinion in his evaluation letter, he was unable to determine whether his opinion was based in fact or speciousness. Trial counsel argued that she was unable to effectively represent Petersen without being able to question the State's sole witness for the annual review.
This deposition was sought in a preliminary proceeding. The petitioner argued that he wished to object to the admissibility of the expert's evaluation under ER 703, and therefore required a deposition. The State is required to do the annual review and the committed person has the opportunity to go forward and rebut the State's evidence. ER 703 simply discusses the permissible bases for an opinion. It does not establish entitlement to a disposition. The trial court did not err in denying the deposition. Furthermore, the issue is moot as to Petersen's 1999 review hearing because he is entitled under the statute to a new annual review. However, in the interest of fairness, we should hold that in the future the committed person should be allowed to depose the State's witness in the annual review when the person writing the review has never personally evaluated or interviewed the committed person.

CONCLUSION
The initial burden of proof at the annual probable cause hearing rests with the State. The standard applied to the burden of proof is properly a preponderance of the evidence. The committed person has the burden to produce evidence to controvert the State's evidence. The State bears the ultimate burden of persuasion. Finding no abuse of discretion, the trial court in both Petersen and Thorell should be affirmed.
BRIDGE and OWENS, JJ., concur.
NOTES
[1] RCW 71.09.090 was amended in 2001. See Laws of 2001, ch. 286, § 9. This appeal falls under the former statute.
[2] Previous annual reviews of Petersen formed the basis of an opinion by this Court in 1999. See In re Det. of Petersen, 138 Wash.2d 70, 980 P.2d 1204 (1999).
[3] Unlike Petersen, the burden of proof issue was directly presented to this Court in Turay. See Turay, 139 Wash.2d at 384, 986 P.2d 790 ("We granted review of ... the State's cross appeal ... that the State bears the burden of proof at show cause hearings."); see also id. at 422-23, 986 P.2d 790 (placing the subheading "Burden of Proof at the Show Cause Hearing under RCW 71.09.090(2)" under the larger heading "Substantive Issues Raised by the State"); see also id. at 424, 986 P.2d 790 (restating the majority's holding on the burden of proof issue in the "Conclusion" section).
[4] The trial court found "[a]ll of the conditions of release to which Dr. Gratzer refers are in terms of `should be considered.'" CP at 348 (Order on Recons.). Dr. Gratzer also set forth five conditions he believed "should be required." See CP at 296-97 (Decl. of Dr. Gratzer on July 6, 1999).