# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 51246-7-II |
| BRIAN TAYLOR-ROSE. | UNPUBLISHED OPINION |

SUTTON, J. — We granted Brian Taylor-Rose's motion for discretionary review of the superior court's denial of his petition for an unconditional release trial. Taylor-Rose argues that he presented prima facie evidence that he no longer meets the criteria for civil commitment because he has "so changed" through sex offender-specific treatment and that the court erred by denying his petition. We agree. We reverse and remand with instructions to schedule Taylor-Rose's case for trial.

## FACTS

After a jury trial, Taylor-Rose was committed to the Special Commitment Center (SCC)[1] as a sexually violent predator on August 5, 2015. Taylor-Rose's criminal history included two sex offenses involving minors. The first offense occurred when Taylor-Rose was 19. He touched a 13-year old boy's genitals and buttocks over the boy's clothes while the boy slept. Taylor-Rose pleaded guilty to second degree child molestation. The second offense occurred when Taylor-Rose was 30 years old. Taylor-Rose pleaded guilty to third degree child molestation following allegations that he had touched a seven-year old boy's penis.

---

[1] The Department of Social and Health Services operates SCC programs.

As part of Taylor-Rose's 2016 annual review, Dr. Robert Saari reviewed Taylor-Rose's treatment participation and behavior at the SCC. Dr. Saari noted that Taylor-Rose consistently participated in sex offender treatment, met individually for case management, and addressed therapeutic issues in case management sessions. Dr. Saari reported that Taylor-Rose's residential functioning was good, and that Taylor-Rose typically made good use of case management sessions by openly addressing issues and therapeutically engaging without defensiveness. According to Dr. Saari, Taylor-Rose was doing well in sex offender treatment group, was actively engaging in therapy, and was showing a willingness to bring clinically relevant issues to the group. Dr. Saari noted that Taylor-Rose was working on his written treatment work and presenting it to the group, a necessary step toward progressing in the treatment program.

A plethysmograph evaluation conducted on Taylor-Rose showed no sexual arousal to pre-pubescent males or females in the preschool to grammar school age ranges, or to sexually violent stimuli involving either children or adults.

Dr. Saari diagnosed Taylor-Rose with nonexclusive pedophilia and antisocial personality disorder with borderline traits. He opined, "Although [Taylor-Rose] is making an effort at making changes, and apparently has done so in treatment prior to the SCC, his impulse control has not proven sufficient to keep him free of sexual offending." Supp. Clerk's Papers (CP) at 483. Dr. Saari expressed concerns about Taylor-Rose's self-awareness:

> Cognitive-behavioral, relapse prevention treatment for sexual deviancy requires open acknowledgment of a problem with sexual deviancy and a willingness to openly disclose internal experience so that therapists can assist with the development of interventions. Given [Taylor-Rose's] state of denial, helping him learn to effectively manage his risk for sexual re-offense will not be possible.

Supp. CP at 484.

2

Dr. Saari concluded that Taylor-Rose's pedophilic disorder "predisposes him to be more likely than not to commit another sexually violent offense, if unconditionally released to the community." Supp. CP at 490.

In February 2017, Dr. Karen Franklin conducted a psychological evaluation to determine whether Taylor-Rose had "so changed through treatment that he no longer meets civil commitment criteria." CP at 103. Dr. Franklin reviewed Taylor-Rose's history, conducted collateral interviews with Taylor-Rose's mother and a childhood treatment provider, and evaluated Taylor-Rose for a period of nine hours over two days. Dr. Franklin diagnosed Taylor-Rose with relatively mild borderline personality disorder. Dr. Franklin reported no evidence that, at the time of the evaluation, Taylor-Rose had pedophilia. She explained:

> There is no evidence at the present time of persistent or intense sexual interest in children. To the contrary, there is strong evidence of preferential arousal to consensual relations with adult men: the behavioral, self-report and physiological test data all converge. Furthermore, there is no evidence of an abnormally high sex drive: Brian's libido and testosterone levels are well within the normal range. A pedophilia diagnosis should not rest upon a weak foundation of one or two instances of inappropriate touching, committed many years apart under conditions of intoxication, and strung together with uncorroborated hearsay based on unreliable self-report. In my opinion, there is insufficient data to support a diagnosis of pedophilia.

CP at 142.

Dr. Franklin recapped Taylor-Rose's treatment at the SCC, noting that his treatment records reflected he was "diligent in participating in treatment, and has made good progress." CP at 148.

Dr. Franklin assessed whether Taylor-Rose had changed through treatment by using the Sex Offender Treatment Intervention and Progress Scale (SOTIPS), which measures progress in

16 areas, using a four-point rating system. Dr. Franklin concluded that Taylor-Rose scored a 10 out of a prorated maximum total of 42 points, where lower scores indicate greater progress and less risk of re-offense. Dr. Franklin identified eight prominent areas of treatment progress, including (1) recognizing the need for change and working to modify his behavior; (2) cooperating and engaging in treatment sessions; (3) working to understand the issues that contributed to his offending; (4) recognizing and self-correcting attitudes and thoughts that support offending as they occur; (5) improved motivation to obey rules and avoid infractions; (6) demonstrating better behavioral stability and less impulsivity; (7) being drug and alcohol free for more than two years; and (8) having appropriate sexual interests and behaviors with age-appropriate partners.

Dr. Franklin also noted that Taylor-Rose still struggled with self-management and was reactive to negative emotional states such as loneliness, anxiety, or anger. Ultimately Dr. Franklin concluded, "Based on all of the foregoing, it is my opinion—offered with a reasonable degree of psychological certainty—that Mr. Taylor-Rose has so changed through sex offender-specific treatment that he no longer meets the definition of a sexually violent predator." CP at 150.

On May 5, 2017, based on Dr. Franklin's evaluation, Taylor-Rose petitioned the superior court for an unconditional release trial pursuant to RCW 71.09.090. The State opposed Taylor-Rose's petition, arguing that Dr. Franklin's evaluation constituted an impermissible collateral attack on Taylor-Rose's initial commitment.

In September 2017, the State completed its second annual review of Taylor-Rose and concluded that he continued to meet the sexually violent predator criteria. As part of the 2017 annual review, Dr. Megan Carter evaluated Taylor-Rose. She reported that although Taylor-Rose had attained a higher privilege level earlier in the review period, at the time of her evaluation,

Taylor-Rose had regressed in the treatment program due to some behavioral problems. Dr. Carter noted that Taylor-Rose "presents in the *contemplation* stage of change, vacillating between motivations to address issues and engaging in behaviors that are directly in violation of positive change." CP at 48. Dr. Carter noted a positive urinalysis result in April 2017.

Dr. Carter diagnosed Taylor-Rose with pedophilic disorder, antisocial personality disorder with borderline personality disorder traits, and substance use disorder. Taylor-Rose scored 5 or 6 on a Static-99R, which is an actuarial measure of risk for sexual offense recidivism, placing him in the above average to well above average risk category for being charged or convicted of another sexual offense. In her professional opinion, Dr. Carter concluded that Taylor-Rose continued "to suffer from a mental abnormality and/or personality disorder that makes him likely (more probably than not) to engage in predatory acts of sexual violence if not confined in a secure facility." CP at 70.

The superior court concluded that Taylor-Rose did not demonstrate probable cause for a new trial to be ordered under RCW 71.09.090(2)(c) and denied Taylor-Rose's petition.

ANALYSIS

Taylor-Rose argues that he supported his petition for an unconditional release trial with prima facie evidence that he has so changed through treatment that he is no longer a sexually violent predator, and therefore the superior court erred by denying his petition. We agree.

I. LEGAL PRINCIPLES

Where a court or jury finds beyond a reasonable doubt that an individual is a sexually violent predator, he must be confined to a secure facility until such time as: (1) the person's condition has so changed that he no longer meets the definition of a sexually violent predator, or

(2) conditional release to a less restrictive alternative is appropriate. RCW 71.09.060(1); *State v. McCuistion*, 174 Wn.2d 369, 379, 275 P.3d 1092 (2012). Once a sexually violent predator has been committed to a secure facility, "he is entitled to a written annual review by a qualified professional to ensure that he continues to meet the criteria for confinement." *McCuistion*, 174 Wn.2d at 379; RCW 71.09.070. The committed individual may also petition the superior court for conditional release to a less restrictive alternative or unconditional discharge. RCW 71.09.090(2)(a).

If the person does not waive his right to petition the superior court, the court must set a show cause hearing to determine whether probable cause exists to warrant a trial. RCW 71.09.090(2)(a). At the show cause hearing, the State must present prima facie evidence that the committed individual continues to meet the definition of a sexually violent predator and that release to a less restrictive alternative would not be appropriate. RCW 71.09.090(2)(b); *McCuistion*, 174 Wn.2d at 380.

Under RCW 71.09.090(2)(c), the superior court must order a full evidentiary hearing if the State fails to present prima facie evidence that continued confinement is warranted or if the committed individual establishes probable cause that his condition has "so changed" since his last commitment trial that he no longer meets the definition of a sexually violent predator or that release to a less restrictive alternative would be appropriate. *McCuistion*, 174 Wn.2d at 380. Probable cause exists to believe that a person's condition has "so changed" if evidence exists, since the person's last commitment trial, of a substantial change in the person's physical or mental condition. As relevant here, a new trial proceeding may only be initiated if a licensed professional

6

provides current evidence that a person's mental condition has changed through a "positive response to continuing participation in treatment." RCW 71.09.090(4)(ii).

"While the probable cause standard is not a stringent one, it allows the court to perform a critical gate-keeping function." *McCuistion*, 174 Wn.2d at 382. Under this standard, the superior court may not weigh evidence. *In re Det. of Petersen*, 145 Wn.2d 789, 798, 42 P.3d 952 (2002). Instead, the court must decide whether the facts, if believed, are sufficient to establish that the person has "so changed" and is no longer a sexually violent predator. *Petersen*, 145 Wn.2d at 796-98. An expert's opinion that a sexually violent predator no longer meets the definition of a sexually violent predator due to treatment will satisfy the prima facie showing. *See In re Det. of Ambers*, 160 Wn.2d 543, 559, 158 P.3d 1144 (2007). Mere conclusory statements, however, are insufficient to establish probable cause. *In re Det. of Jacobson*, 120 Wn. App. 770, 780, 86 P.3d 1202 (2004).

We review de novo a superior court's conclusion about whether the evidence meets the probable cause standard. *Petersen*, 145 Wn.2d at 799.

## II. PRIMA FACIE EVIDENCE

Given the relatively low bar that a petitioner must meet to make a prima facie showing, we hold that Taylor-Rose produced sufficient evidence to support his petition for an unconditional release trial.

Dr. Franklin's opinion satisfies the probable cause standard. First, she identified that Taylor-Rose had been highly engaged in treatment for the two years prior to the evaluation, including being "cooperative, diligent, and non-defensive in group and individual treatment sessions," and "working to understand the issues that contributed to his offending" in individual and group therapy and in written assignments. CP at 149. Second, Dr. Franklin concluded that

7

Taylor-Rose had benefited from treatment in that he "recognizes the need for change," and "is actively in the process of working to positively modify his behavior." CP at 149. Dr. Franklin also noted that Taylor-Rose's ability to obey rules was substantially improved, and he was "demonstrating far greater behavior stability and less impulsivity than in the past." CP at 150.

Third, Dr. Franklin concluded that Taylor-Rose presented a lowered risk of sexual recidivism after administering a SOTIPS evaluation which showed his risk of re-offense is in the average range for convicted sex offenders and is not more likely than not to commit predatory acts of sexual violence if not confined. Dr. Franklin noted that Taylor-Rose was capable of recognizing and self-correcting attitudes or thoughts that might support sex offending as they occur. Dr. Franklin also concluded that Taylor-Rose's commitment to continued sobriety was a significant area of reduced risk.

In her opinion, Dr. Franklin concluded that, at the time of her evaluation, there was no current evidence of sexual deviance and that Taylor-Rose's sexual interests and behaviors were entirely appropriate. Satisfying the probable cause standard, Dr. Franklin concluded that Taylor-Rose had so changed through his sex offender-specific treatment that he no longer met the definition of a sexually violent predator.

The State disputes many of Dr. Franklin's conclusions, pointing to its own experts' opinions as evidence that Taylor-Rose has not so changed as to be entitled to an unconditional release trial. However, in determining whether probable cause exists to warrant a trial, we "must assume the truth of the evidence presented; [we] may not 'weigh and measure asserted facts against potentially competing ones.'" *McCuistion*, 174 Wn.2d at 382 (quoting *Petersen*, 145 Wn.2d at 797. Indeed, this limited review of the evidence is consistent with the sexually violent predator

statutory scheme, wherein a petitioner may be entitled to a trial because he produced prima facie evidence that he was so changed, despite the fact that the State also carried its burden of producing prima facie evidence that he continued to meet the definition of a sexually violent predator.

While Dr. Franklin's opinion may be subject to impeachment upon cross-examination at trial, such a weighing of the evidence is not appropriate in a probable cause determination. "[A] full presentation of all the evidence where that evidence can be weighed and disputes can be resolved by the fact finder" remains an exercise for trial. *Petersen*, 145 Wn.2d at 797-98. At this stage, we need only determine whether Dr. Franklin's opinion, if believed, establishes probable cause. We hold that it does. We reverse and remand with instructions to schedule Taylor-Rose's case for trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, C.J.

MELNICK, J.