[No. 52248-5-I.   Division One.   March 22, 2004.]

*In the Matter of the Detention of* JEROME JACOBSON.

THE STATE OF WASHINGTON, *Appellant*, v. JEROME JACOBSON, *Respondent.*

*Norm Maleng, Prosecuting Attorney*, and *Brooke E. Burbank, Deputy*, for petitioner.

*Katherine J. Wallace* (of *The Defender Association*), for respondent.

AGID, J. — The State asks us to review the trial court's ruling that the State failed to meet its burden of demonstrating a continuing basis for committing Jerome Jacobson as a sexually violent predator (SVP) under *In re Detention of Petersen*[1] and RCW 71.09.090. Based on this finding, the trial court granted Jacobson's request for a new commitment hearing. We granted discretionary review. The State asserts the trial court erred by improperly weighing the evidence the State presented and ordering a new commitment hearing in the face of prima facie evidence that Jacobson continues to meet the statutory criteria for an SVP. We reverse because the trial court did improperly weigh the evidence and the State produced prima facie

[1] 145 Wn.2d 789, 42 P.3d 952 (2002).

evidence that Jacobson continues to meet the definition of an SVP.

## FACTS

Jacobson was civilly committed as an SVP under chapter 71.09 RCW in 1999 and was sent to the Special Commitment Center (SCC) where he is currently confined. At his annual review hearing, the State presented an annual review report prepared by the SCC's Dr. Paul Spizman.[2] The report evaluated Jacobson, but it did not include a personal interview. The report includes expert opinions based on Jacobson's treatment plan, prior psychological evaluations, progress notes, homework assignments, Behavioral Management Reports, incident reports, staff interviews, and staff notes. Dr. Spizman also noted in a number of sections that his conclusions were limited by Jacobson's refusal to communicate with SCC staff and the absence of a personal interview.[3] Jacobson did not submit any evidence that his condition had "so changed" that he no longer required total commitment. Rather, he argued that the State's annual review report did not contain sufficient evidence for the State to meet its burden of making a prima facie case showing that there is a continuing basis for Jacobson's commitment at the SCC. The trial court agreed and ordered a new commitment hearing.

## ANALYSIS

▪ Under RCW 71.09.090(2)(c), a person committed as an SVP has a right to an annual review and show cause hearing on his status.

---

[2] Dr. Dan Yanish of the SCC also approved the report.

[3] At a previous hearing, the trial court entered an order permitting Jacobson's counsel to be present at and tape-record any interview with him. The SCC did not conduct an interview with Jacobson based on its policy of forgoing clinical interviews when the committed person requests that his attorney be present. While the parties debate the propriety of the SCC's policy, we note that the outcome in this case would be the same if Jacobson had refused to be interviewed. In addition, he had the opportunity to come forward with whatever evidence he wanted the court to hear at his annual review hearing.

If the court at the show cause hearing determines that either: (i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator and that no proposed less restrictive alternative is in the best interest of the person and conditions cannot be imposed that would adequately protect the community; or (ii) probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community, then the court shall set a hearing on either or both issues.

In *In re Petersen*, the Washington Supreme Court held that the burden of proof at a show cause hearing under RCW 71.09.090(2) is on the State.[4] The State may rely exclusively on the annual report prepared under RCW 71.09.070 to establish probable cause.[5] There is probable cause under the statute if the State makes a prima facie showing. The trial court must not weigh the evidence.[6] The *Petersen* court stated:

[T]he State must make out a prima facie case by setting forth evidence that, if believed, shows (1) the prisoner still has a mental abnormality or personality disorder, i.e., the prisoner has not "so changed," and (2) this mental abnormality or personality disorder will likely cause the prisoner to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged.[7]

If the State fails to meet its burden, "there is probable cause to believe continued confinement is not warranted and the matter shall be set for a full evidentiary hearing."[8] A trial

---

[4] *In re Petersen*, 145 Wn.2d at 797.

[5] RCW 71.09.090(2)(b).

[6] *In re Petersen*, 145 Wn.2d at 798.

[7] *Id*. The court cites former RCW 71.09.090(2). The 1995 changes in the statute's language did not affect this requirement.

[8] *Id*.

court's decision about whether evidence meets the probable cause standard is reviewed de novo.[9]

In this case, the State submitted the SCC's report at Jacobson's annual review hearing on March 19, 2003. There are several sections of the report that are relevant to this appeal: the Evaluation Process, Evaluation of Treatment Progress at the SCC, Current Mental Condition, Dynamic Risk Factors, Risk for Future Sexual Violence, and Sexually Violent Predator Status.

In the opening paragraph of the Evaluation Process section of his report, Dr. Spizman summarized the report and concluded the section by qualifying his opinion: "the background information, opinions, and conclusions in [my] report could possibly change if [Jacobson] were to interview and provide relevant information." He noted that Jacobson refused to participate in an interview without his attorney present and, because the SCC does not allow attorneys to be present in the interviews, he did not interview Jacobson.

When discussing Jacobson in the Treatment Progress section of the report, Dr. Spizman notes again that the lack of a personal interview placed certain limitations on his evaluation and his diagnostic impressions are based solely on a record review. He goes on to discuss Jacobson's medical problems, including diabetes mellitus, diabetic retinopathy, chronic obstructive/restrictive lung disease, hypertension, hyperlipidemia, coronary artery disease, and undiagnosed urinary and fecal soiling. He also notes Jacobson's antisocial behavior with other residents and lack of participation in treatment.[10] He states that Jacobson is a man in poor health who is taking a "passive/passive aggressive role" in his care and also notes that depression may explain some of his antisocial behaviors. But Jacobson has not given SCC staff enough information to make such a diagnosis. Apart

---

[9] *Id.* at 799.

[10] It is uncontested that Jacobson has not participated in treatment at the SCC.

from his apparent depression, Dr. Spizman notes, very little information is available about his sexual behaviors. He cites as one indication of Jacobson's current sexual behavior an incident where the staff reported that Jacobson appeared to be focused on some of the children who were present at an SCC family social.[11]

■ In diagnosing Jacobson in the Current Mental Condition section of the report, Dr. Spizman again notes that "diagnostic impressions are a challenge with Mr. Jacobson given his minimal contact with staff or other residents." To make his diagnosis, he reviewed Jacobson's records, his self-report,[12] and information about previous psychologists' and psychiatrists' diagnoses. Noting that Jacobson was previously diagnosed with "Pedophilia, Sexually attracted to males, Nonexclusive type," he concludes there is no indication that he "has experienced any changes in this area."[13] He then opines that Jacobson *currently* suffers from mental abnormalities:

[the] current DSM-IV-TR [Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed., text rev. 2000)] diagnoses of Mr. Jacobson include:

Axis I:   Pedophilia, Sexually Attracted to Males, Non-exclusive Type Noncompliance with Treatment Dysthymia (Rule-Out Major Depressive Disorder)

---

[11] Jacobson's prior criminal sexual acts involved children, and he was reportedly escorted from this gathering.

[12] This appears to be a report that Jacobson prepared, and Dr. Spizman describes a self-report as "often a key component in formulating diagnoses."

[13] He refers to the incident at the family social as evidence that Jacobson has not changed. Jacobson complains that this evidence is hearsay and should not be considered. However, annual review hearings under chapter 71.09 RCW are analogous to dispositional hearings under chapter 71.05 RCW, in which the rules of evidence do not apply. ER 1101(c)(3). *Compare State v. Anderson*, 33 Wn. App. 517, 519-20, 655 P.2d 1196 (1982) (concluding that while dispositional hearings under the sexual psychopathy statute (RCW 71.06.091) are not explicitly exempted, they fall within the rationale of ER 1101(c)). The case Jacobson cites in support of his argument is distinguishable. In *State v. Watson*, 227 Wis. 2d 167, 595 N.W.2d 403 (1999), the court concluded that a psychologist's opinion that relies *solely* on hearsay that is disputed by the defendant does not itself constitute probable cause that the defendant's offense was sexually motivated under Wisconsin's SVP statute. In this case, there is an abundance of additional evidence supporting the expert's opinion. And, although Jacobson had the opportunity, he did not offer any evidence disputing the State's version of the incident.

Axis II: Personality Disorder N.O.S. [not otherwise specified], with Antisocial features

With regard to Dynamic Risk Factors, Dr. Spizman discusses Jacobson's criminal history and Jacobson's uncertain "current mood." Dr. Spizman notes that if Jacobson is experiencing depression, he may be engaged in deviant sexual thoughts. But he admits it is difficult to determine how Jacobson is thinking or behaving in light of the current lack of communication.

In evaluating Risk for Future Sexual Violence, Dr. Spizman reviews Jacobson's previous diagnoses, his dynamic risk factors, and the possible reasons for his current difficulties with incontinence, poor eating, lack of compliance with medical procedures, and lack of communication. He concludes that based on this information, Jacobson's risk of reoffending remains high so that a less restrictive setting is not appropriate.

Finally, when evaluating Jacobson's Sexually Violent Predator Status, Dr. Spizman states:

> Mr. Jacobson, has met, and appears to continue to meet the definition of a sexually violent predator. He has been charged with, and convicted of, crimes of sexual violence . . . , and he suffers from a mental abnormality . . . that seriously impairs his ability to control his sexually violent behavior. This mental abnormality or personality disorder makes him likely to engage in predatory acts of sexual violence if not confined to a secure facility (i.e., he will more probably than not engage in such acts if released unconditionally from the detention of the sexually violent predator petition).

After reviewing the report, the trial court expressed concern about its sufficiency. It did not find the annual review deficient because there was no interview with Jacobson. Rather, the judge expressed concern about Dr. Spizman's statement that a personal interview with Jacobson "could possibly change" his opinions and conclusions, as well as his comments throughout the report indicating that Jacobson's refusal to communicate made the diagnosis difficult. She also expressed concern with Dr.

Spizman's statements about the difficulty in gauging Jacobson's risk without basic communication and his inability to determine why Jacobson was not communicating with the staff and was experiencing behavioral difficulties. The doctor said these problems could be caused by depression, dementia, or deliberate passive aggressive tactics or a combination of all three. Based on the report, the trial court said there was not enough evidence "to show what is [Jacobson's] current mental state and whether that mental state is a dangerous mental state." Because it was unsatisfied with the State's evidence, the court ordered a full evidentiary hearing to present more evidence about Jacobson's current mental state.

## I. Weighing the Evidence

The State argues that the trial court improperly weighed the State's evidence. It points out that Dr. Spizman found to a reasonable degree of psychological certainty that Jacobson currently suffers from a mental abnormality and he continues to meet all the criteria for an SVP. Under *In re Petersen*, it argues, the doctors' opinions must be taken as true, and only if they conclude that Jacobson does *not* continue to qualify as an SVP can the trial court find that the State has not made a prima facie showing. By concluding there are "enough caveats and hesitations" to make the report insufficient proof that Jacobson continues to meet the definition of an SVP, the State asserts, the trial court ignored the plain language of the report and improperly granted a new hearing. The State compares the trial court's conclusion in this case to that of the trial court in *In re Detention of Thorell*, the companion case to *Petersen*. In that case, the Washington Supreme Court reversed a trial court's ruling denying Thorell a new hearing because the trial court found Thorell's expert's opinion " 'very

guarded.' "[14] The Supreme Court concluded the trial judge improperly weighed the evidence, rather than simply determining whether it existed.[15] The State asserts that this trial court, like the trial court in *Thorell*, essentially rejected Dr. Spizman's expert conclusions because it did not think the opinion was strong enough to be believed. The State argues that the ruling "rings of weighing the evidence,"[16] which is improper under *Petersen*.

In response, Jacobson argues that the trial court merely evaluated the State's evidence by determining that even assuming the facts were true, they are not sufficient to support the State's claim that Jacobson is still an SVP. He rejects the State's argument that the trial court should not look behind an expert's opinion to determine if it is supported by sufficient facts because the "State would meet its burden merely by having a licensed psychologist recite the elements of the statute[ ] [and t]he Annual Review proceedings would be rendered a farce."

Jacobson asserts that while the lack of a personal interview does not necessarily invalidate an annual review report, its absence in this case prevents the State from establishing probable cause. He asserts there are insufficient facts to support Dr. Spizman's conclusion and too many competing inferences that can be drawn from the report. He points to several problems with Dr. Spizman's report: he was unable to determine the root causes of Jacobson's uncommunicativeness and because he does not know what is actually motivating Jacobson's behavior, he can provide little information about Jacobson's current mental state or level of risk.[17] Jacobson also notes there

---

[14] *In re Petersen*, 145 Wn.2d at 803. *Petersen* and *Thorell* were filed only a week before the order in this case was entered. It is likely the trial court did not have the benefit of the Supreme Court's ruling.

[15] *Id.*

[16] *Id.*

[17] For example, he stated some evidence of Jacobson's continued risk is the "passive aggressive" stance he has taken toward his treatment, but later Dr. Spizman admits he could not determine whether he was actually taking a passive

was no written documentation of his alleged "focus[ ] on children" at the SCC family social, and Dr. Spizman assumes he has not changed because he has not participated in treatment even though change can occur in any number of ways.

██ We agree with Jacobson that a trial court may properly look beyond an expert's stated conclusion to determine whether it is supported by sufficient facts. Mere conclusory statements are insufficient to establish probable cause.[18] In *Petersen*, the Washington Supreme Court compared the probable cause required in annual review hearings to probable cause determinations in the context of the Fourth Amendment. For example, a court looks beyond conclusory statements in a warrant to ensure they are supported by sufficient facts to establish probable cause. Like a court determining whether there is probable cause for a search warrant,[19] a court reviewing the sufficiency of the State's evidence in an SVP annual review hearing must be permitted to look at the facts contained in the report to decide whether they support the expert's conclusions. After making that determination, the court can decide whether the evidence, if believed, amounts to probable cause.[20] But here the trial court went beyond examining whether the facts supported the conclusion and improperly weighed the

aggressive stance, whether he was depressed, or whether he was experiencing cognitive decline.

[18] *State v. Stephens*, 37 Wn. App. 76, 678 P.2d 832, *review denied*, 101 Wn.2d 1025 (1984).

[19] *See State v. Patterson*, 83 Wn.2d 49, 515 P.2d 496 (1973) (examining the facts and details underlying a conclusory statement to determine whether an affidavit for a search warrant was sufficient to establish probable cause); *State v. Trasvina*, 16 Wn. App. 519, 524, 557 P.2d 368 (1976) (a " '[r]ecital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police' ") (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)), *review denied*, 88 Wn.2d 1017 (1977).

[20] *See In re Petersen*, 145 Wn.2d at 797 ("the burden is on the State to recite objective facts and circumstances which, if believed, would lead a neutral and detached person to conclude that more probably than not, evidence of a crime will be found if a search takes place") (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)).

evidence. The trial court commented on the credibility of the expert's conclusion, stating that the "caveats and hesitations" contained in the report rendered the report insufficient as prime facie evidence that Jacobson continued to meet the statutory requirements for an SVP. Like the trial court's comment in *Thorell* that the expert's opinion appeared "guarded," the trial court's statements here suggest the court weighed the evidence by judging the credibility of the expert's opinion. By rejecting the State's evidence as not credible, the trial court exceeded its role in an annual review hearing, which is to simply determine whether the factual assertions are sufficient and whether, when taken as true, the evidence establishes probable cause.

## II. The State's Probable Cause Showing

We must now decide whether the annual review report is sufficient to establish probable cause that Jacobson remains an SVP. We conclude that it is because the underlying facts in the report support Dr. Spizman's conclusions.

Dr. Spizman concluded that (1) Jacobson continues to suffer from a mental condition that (2) makes him more likely than not to engage in sexually violent acts if not confined to a secure facility. First, he determined that Jacobson currently suffers from a number of mental abnormalities. Although he stated that these diagnostic impressions were *difficult* to make without more contact with Jacobson, he supported his conclusion that Jacobson currently suffers from these disorders with citations from Jacobson's medical records, incidents at the SCC, lack of participation in treatment for disorders that tend to be chronic and lifelong, and Jacobson's overall behavior at the SCC. Dr. Spizman declared that the documents and procedures he relied upon in completing the evaluation are "those reasonably relied upon by psychologists completing forensic evaluations," and he further stated that he holds the opinions contained in his report to a reasonable degree

of psychological certainty. As Jacobson concedes, an annual review report is not necessarily deficient when it does not include a personal interview.[21] This is particularly true in a case like this one where the doctor uses methods and documents that are often used in this type of evaluation, cites to current behaviors and diagnoses to support his conclusion, and based on that information concludes to a reasonable psychological certainty that the person continues to suffer from these mental abnormalities.

Jacobson argues that Dr. Spizman's observations about his dynamic factors are insufficient[22] because they address only his prior criminal history and, other than citing his nonparticipation in treatment and possible depression, Dr. Spizman engages in no analysis of whether these factors are currently present. Dr. Spizman indeed discusses Jacobson's past behavior and cites the risk factors it suggests.[23] But he also makes observations about Jacobson's current behavior and notes that the *current* behavior (whether it is caused by depression, dementia, or intentional passive/passive aggressive behavior) includes a number of risk factors, including negative emotionality, sexualized coping, and child molester attitudes. And although Dr. Spizman acknowledges his diagnosis was limited by lack of communication with Jacobson, he suggests that this lack of participation in treatment and cooperation with supervision is itself a risk factor specific to Jacobson. In sum, the facts in the State's report are sufficient to support Dr.

---

[21] *See In re Det. of Petersen*, 138 Wn.2d 70, 95, 980 P.2d 1204 (1999).

[22] Dr. Spizman suggests that he considers Jacobson's DSM diagnosis (Pedophilia coupled with antisocial personality traits) along with the dynamic risk factors to determine his risk of reoffending.

[23] Dr. Spizman discusses Jacobson's past criminal behavior, which includes a history of escape from Western State Hospital's Sexual Psychopath Program in 1974. Even at that time, the staff was unable to involve him in treatment, and he refused to be accountable for his deviant behavior or to make changes. After being arrested and jailed on various sexual and nonsexual offenses, Jacobson was convicted of rape of a child in the second degree in 1992. At Jacobson's end-of-sentence review in 1998, Western State Hospital submitted a letter that stated, "Jacobson is very cunning and devious, has a long history of criminal behavior, and tried to use the psychiatric part of his hospital stay to dodge the responsibility for the crimes he committed in [another] [c]ounty."

Spizman's conclusion that Jacobson continues to suffer from an abnormal mental condition.

Second, the report contains facts that support Dr. Spizman's conclusion that Jacobson's mental condition makes it more likely than not that he will reoffend. He makes it clear that Jacobson's mental diagnoses combined with his dynamic risk factors lead to an elevated risk of reoffending. And because Jacobson has not participated in treatment or learned to manage the risks, "he will likely end up in the same cycle of assaultive behavior as before." Jacobson argues that a mere failure to participate in treatment is not enough the meet the State's burden that a person remains an SVP. Assuming that were true, it is irrelevant in this case where Dr. Spizman backs up his opinion with current diagnoses, comments on current behavior, particularly Jacobson's passivity, and the effect that not participating in treatment has on managing the risks Jacobson poses to his victims.

Jacobson also argues that Dr. Spizman's inability to diagnose the root cause of his behavior undermines his conclusion that Jacobson's "passive aggressive stance" is evidence of his continued risk. We disagree. Dr. Spizman does state that he is unsure whether Jacobson's passive behavior was attributable to dementia, depression, or intentional passive/passive aggressive behavior. But he concludes that no matter which mental abnormality or combination of abnormalities was causing the behavior, Jacobson was still at risk of reoffending. In the relevant section of the report, Dr. Spizman stated there were three possible reasons for Jacobson's behavior: cognitive difficulties, intentional acting out, or depression. He went on to say that

> any of these reasons, or a combination, are problematic regarding his sexual offending. If he is confused, it may be more difficult for him to recognize inappropriate sexual behaviors that are oriented toward children. This may have been what was seen at the recent social gathering, where he was inappropriately focusing on the children. If it is more that he is acting out to upset others, this would indicate that he may act out

sexually in the future to harm or upset others. Finally, if he is simply depressed and indifferent to how his behavior impacts himself or others, this may also lead to offending, as he would have little motivation to contain his sexual urges. Of course, any combination of these three reasons would lead to similar difficulties regarding his sexual behaviors.

He also observed that Jacobson's refusal to communicate about basic behavior like his incontinence and his unwillingness to take simple steps to assist with it, such as wearing protective undergarments, suggest he would be virtually unable to communicate about more difficult issues in sex offender treatment. "Thus, in sum, his risk [for sexual violence] remains high[ ] [because c]urrent difficulties are not being discussed, nor even coped with at a very basic level." Because these facts are sufficient to support Dr. Spizman's conclusions that Jacobson continues to suffer from a mental abnormality that makes it more likely than not that he will reoffend, the State provided sufficient evidence to establish probable cause in this case, and the trial court erred by ordering a new commitment trial.[24]

Reversed.

BAKER and APPELWICK, JJ., concur.

---

[24] Because we reverse the order for a new evidentiary hearing, we do not reach the State's argument that the trial court's conclusion cannot be reconciled with its finding that the State met its burden of showing that Jacobson is too dangerous to be released to a less restrictive alternative.