IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Detention of ) 
                         )    No. 70750-7-I

DENNIS WAYNE BREEDLOVE,    )
                         )    DIVISION ONE
         Respondent.     )
                         )    UNPUBLISHED OPINION
                         )
                         )
                         )    FILED: May 18, 2015

TRICKEY, J. — An individual confined as a sexually violent predator (SVP) must present sufficient evidence that he has "so changed" to obtain an unconditional release trial. Here, the petitioner relies on a report that does not meet the necessary criteria to establish a sufficient change such that a release trial should be granted. Accordingly, we reverse the trial court's decision granting an unconditional release trial.

## FACTS

Dennis Breedlove is confined as a sexually violent predator (SVP) under chapter 71.09 RCW, Washington's SVP statute. That statue requires annual review of an SVP status. RCW 71.09.070(1). Breedlove's annual reviews, since his commitment in 2004, have supported his continued detention. In June 2011, the trial court found that Breedlove continued to meet the criteria for commitment as an SVP and that he failed to present prima facie evidence that his progress warranted an unconditional release trial. Breedlove did not demonstrate that a

less restrictive alternative (LRA) was in his best interest or that conditions could be imposed that would adequately protect the community.[1]

On January 28, 2013, the Special Commitment Center (SCC) completed another review pursuant to RCW 71.09.070(1). In that review, Wendi L. Wachsmuth, Ph.D, opined that Breedlove continued to meet the criteria for commitment as an SVP and that no less restrictive alternatives could be imposed that would adequately protect the community, nor would such restrictions be in Breedlove's best interest. Dr. Wachsmuth cited specific examples of failed or ignored treatment along with a history of malfeasance at the SCC.

In 2012, Breedlove retained Christopher J. Fisher, Psy.D to assess his current condition. Dr. Fisher noted that since Breedlove's commitment in 2004, he "only participated in two brief periods of focused sex offender treatment."[2] In 2007, Breedlove was a "stellar participant" in a 12-week introductory group, "Awareness and Preparation."[3] Breedlove did not continue into the Cohort group at that time.

In early 2009 he started a Cohort group, but only stayed in the group for approximately one month. Three years later, in March 2012, Breedlove completed a 12- or 24-week "Biblical Counseling Foundation Self Confrontation Course" designed to assist individuals in changing their cognitive thoughts, feelings, and behaviors based on biblical principles.[4] After receiving a behavioral management report for marijuana possession, Breedlove attended a "Counselor Assisted Self

---

[1] The Mack House (the LRA) does not provide adequate supervision for an untreated high-risk sex offender.
[2] Clerk's Papers (CP) at 168.
[3] CP at 168.
[4] CP at 169.

Help Group," in 2008 through 2009, where he was described to be diligently working on sobriety, including the relationship between his drug addiction and sexual offending.[5]

Dr. Fisher noted and agreed with the most recent annual review that focused on "Breedlove's mental disorder, namely pedophilia, and states that there is little indication that his mental disorder has changed since his initial commitment."[6]

Dr. Fisher set forth the definition of "pedophilia" in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) and had "little doubt" that Breedlove "continue[d] to show evidence of pedophilia" as defined in DSM-IV-TR.[7] Even so, Dr. Fisher criticized the annual review for its failure to address the considerable changes that have occurred in the field of sex offender risk assessment. Those changes, he opines, form the basis to judge Breedlove's risk level as quite different now from when he was first committed. As an example, he cited a 2003 chapter 71.09 RCW evaluation performed by Dr. Packard that used what Dr. Fisher described as outdated and obsolete methodologies and a "gross simplification" of an adequate sex offender risk assessment.[8]

Dr. Fisher concluded that Breedlove no longer met the definition of an SVP "by virtue of the changes he has made in himself through treatment and a generalized maturational process over the last 12 years, combined with wholesale

---

[5] CP at 170.
[6] CP at 184.
[7] CP at 186.
[8] CP at 184.

changes in the field of risk assessment and large amounts of new empirical data now available that was not available at the time of his initial commitment."[9]

After review of the documents and oral argument, the trial court issued the following order:

> [P]ursuant to RCW 71.09.080 the court finds Mr. Breedlove has shown cause to schedule a trial on (1) whether he has changed [and] that he no longer meets criteria of a sexually violent predator; and (2) whether he should be released to a less restrictive alternative.[10]

The trial court denied the State's motion to reconsider the order granting Breedlove an unconditional release trial. The State does not object to a trial on whether Breedlove should be released to a less restrictive alternative.

The State filed a motion for discretionary review arguing that the trial court committed obvious error in granting a release trial when Breedlove showed no evidence of change under the statutory criteria. The State also argued that the statutory term "treatment" is limited to sex offender specific treatment and the trial court erred in failing to support the State's interpretation.

A commissioner of this court agreed that the lack of evidence of change in Breedlove's mental condition of pedophilia warranted discretionary review, but found the trial court's rejection of the State's statutory interpretation of the term "treatment" did not. Accordingly, the commissioner granted discretionary review as to only whether the trial court erred in granting an unconditional release trial on the basis that Breedlove had changed.

---

[9] CP at 186.
[10] CP at 10.

4

## ANALYSIS

A sexually violent predator is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). The standard for "[l]ikely" is "more probably than not." RCW 71.09.020(7).

Because indefinite civil commitment gives rise to serious constitutional concerns, the SVP statute contains certain procedural safeguards, including mandating annual order to show cause hearings under RCW 71.09.090. At a show cause hearing, the State must make a prima facie case that the individual still meets the criteria of an SVP. The SVP also has the opportunity to present evidence that they have "so changed" since the time of their commitment to warrant a new full evidentiary hearing or a new commitment trial. In re Meirhofer, __ Wn.2d __, 343 P.3d 731 (2015); In re Det. of Petersen, 145 Wn.2d 789, 798, 42 P.3d 952 (2002). The trial court may not weigh the evidence, but rather must simply determine whether sufficient evidence has been presented to establish probable cause that the SVP's continued civil commitment is unlawful. Petersen, 145 Wn.2d at 797-98 ("Probable cause exists if the proposition to be proven has been prima facie shown."); In re Det. of Ambers, 160 Wn.2d 543, 557, 158 P.3d 1144 (2007).

Each year, as required by statute, the State had a qualified professional review Breedlove's mental condition to determine whether or not his confinement

5

was still warranted. RCW 71.09.070(1); WAC 388-880-031. Under the statutory scheme, after each annual review, a show cause hearing is held to determine whether probable cause exists for a new evidentiary hearing on the civil commitment. RCW 71.09.090(1),(2)(a). The court must order a new evidentiary hearing if, at the annual show cause hearing, the State fails to present prima facie evidence establishing that the committed person "continues to meet the definition of a sexually violent predator" and that a less restrictive alternative is not warranted. RCW 71.09.090(2)(a)-(c). In making this showing, the State can rely exclusively on the annual review report. RCW 71.09.090(2)(b).

Even if the State meets its prima facie burden, the confined person may still obtain a new evidentiary hearing if the court determines that "probable cause exists to believe that the person's condition has so changed," that he is no longer a sexually violent predator, or that a less restrictive alternative than full confinement is appropriate. RCW 71.09.090(2)(c). Apart from the annual review process, the confined person may independently petition the court for release at any time. RCW 71.09.090(2)(a); WAC 388-880-050(3)(b).

As a result of legislation in 2005, the confined person cannot establish probable cause merely by showing advancing age or any other "single demographic change." RW 71.09.090(4)(c). If the State satisfies its prima facie burden, a full evidentiary hearing is available only upon a showing that the confined person has undergone either (1) a profound and permanent physiological change, such as a stroke, paralysis, or dementia, potentially rending him no longer dangerous; or (2) a profound mental change by receiving psychological treatment

6

services during confinement—potentially rendering him no longer mentally ill. RCW 71.09.090(4)(b)(i),(ii); State v. McCuistion, 174 Wn.2d 369, 392, 275 P.3d 1092 (2012), cert. denied, __ U.S.__, 133 S. Ct.1460, 185 L. Ed. 2d 368 (2013).

This court reviews de novo a trial court's legal conclusion as to whether evidence meets the standard of probable cause required for a sexually violent predator to obtain a new commitment trial. Petersen, 145 Wn.2d at 799. The court must order a full evidentiary hearing on the person's civil commitment if the court finds either (1) a deficiency in the State's prima facie case for continued commitment, or (2) sufficiency of proof by the committed person that he has "so changed" that he no longer meets the criteria for a sexually violent predator. RCW 71.09.090(2)(c); see Petersen, 145 Wn.2d at 798.

As to the first issue, no one claims the State's evidence is deficient. As to the second issue, Breedlove's own evidence is insufficient to show that he has "so changed" that confinement is no longer warranted. Dr. Fisher's report failed to identify a substantial change in Breedlove's mental disorder, pedophilia. His report stated:

> The most recent Annual Review focuses on Mr. Breedlove's mental disorder, namely pedophilia, and states that there is little indication that this mental disorder has changed since his initial commitment. I agree with this finding.[11]

Dr. Fisher contends that Breedlove's risk level should be judged differently in light of changes in sexual recidivism risk assessment, including research findings of age as a protective factor and declining base rates of sexual recidivism in the country. Dr. Fisher criticized the risk assessment method used for

---

[11] CP at 184.

Breedlove's initial commitment and opined that Breedlove's risk score at his initial commitment is "now associated with dramatically lower recidivism estimates."[12]

Essentially, Dr. Fisher challenges the initial commitment finding that Breedlove met the criteria for an SVP. This issue was recently addressed in McCuistion, where the Supreme Court held that evidence from a detainee that he was not and had never been mentally ill, would not support relief through the annual review process because it was in effect a collateral attack on the initial order of commitment. 174 Wn.2d at 386. The initial finding is "a verity in determining whether an individual is mentally ill and dangerous at a later date." McCuistion, 174 Wn.2d at 384-85. The 2005 amendments are "intended only to provide a method of revisiting the indefinite commitment due to a relevant change in the person's condition, not an alternative method of collaterally attacking a person's indefinite commitment for reasons unrelated to a change in condition." LAWS OF 2005, ch. 344, § 1.

Dr. Fisher's report did not identify any evidence demonstrating that Breedlove had experienced a substantial change. As the report noted:

> [I]n examining the considerable changes to the field of sex offender risk assessment that have occurred since Mr. Breedlove's initial commitment, as well as the changes that he himself has undergone, it is far too simplistic to say that because he was once found to be an SVP, he still meets criteria today.[13]

Dr. Fisher's conclusory opinion is that Breedlove never was an SVP. Dr. Fisher's report did state that Breedlove had changed through treatment, but failed to substantiate that statement with any evidence of that change. Indeed, the

---

[12] CP at 185.
[13] CP at 184.

evidence is conflicting as to whether the treatment was 12 or 24 weeks long. No specific evidence of the content of the meetings was presented. Further, the awareness program that Breedlove did complete was merely an informational course about the treatment offered.

The trial court "must look beyond an expert's stated conclusions to determine if they are supported by sufficient facts." In re Det. of Ward, 125 Wn. App. 381, 387, 104 P.3d 747 (2005), superseded by statute on other grounds as recognized by McCuistion, 174 Wn.2d at 397-98. The State put forth evidence that Breedlove continued to show sexual interest in children even when he was in custody.

Dr. Fisher's report fails to cite any changes that Breedlove has made. Attending a group based on "biblical principles" does not demonstrate change. It only demonstrated participation.

Because Breedlove has failed to demonstrate any change, we need not and do not discuss whether the trial court appropriately defined treatment. The trial court's decision to grant an unconditional release trial is reversed; the less restrictive alternative trial may proceed by agreement of the parties.

Trickey, J

WE CONCUR:

Spearman, C.J.

9